NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                          ) Case No. 17-14112-B-13
                               )
ARMANDO NATERA,                ) DCN:    TAT-2
                               )
                    Debtor.    )
_____)

**MEMORANDUM RULING ON ROGER AND SANDRA WARD'S MOTION TO
RETROACTIVELY ANNUL THE AUTOMATIC STAY**

_____

Thomas A. Trapani, FIDELITY NATIONAL LAW GROUP, THE LAW DIVISION
OF FIDELITY NATIONAL TITLE GROUP, INC., Walnut Creek, CA, for
Roger Ward and Sandra Ward, Movants.

Peter A. Sauer, FEAR WADDELL, P.C., Fresno, CA, for Armando
Natera, Debtor.

_____

RENÉ LASTRETO II, Bankruptcy Judge:


**INTRODUCTION**

    Roger Ward and Sandra Ward (collectively "the Wards") seek

to retroactively annul the automatic stay pursuant to

§ 362(d)(1) and (d)(2) as of October 25, 2017, the same date

that Armando Natera's ("Debtor") petition was filed and the date

his real property located at 2430 E. Orrland Avenue, Pixley, CA

93256 ("Property") was sold at a foreclosure sale. Doc. ##76-84.

The Wards submit that (1) the balance of equities favor

retroactively annulling the automatic stay, and (2) as result,

the automatic stay should be annulled under § 362(d)(2).

Doc. #80.

    Debtor timely opposed the Ward's motion, objected to the

Ward's evidence, and submitted his own declarations, exhibits, and a request for judicial notice. Doc. ##85-93. Debtor contends that (1) the Wards were aware of the bankruptcy proceeding and the automatic stay but chose to ignore it, (2) the Wards should not be entitled to annul the stay for cause under § 362(d)(1), and (3) the Wards are not entitled to annul the stay under § 362(d)(2). Doc. #85.

The Wards replied that (1) Debtor's chapter 13 case would not have succeeded considering the case was dismissed for failing to make installment payments, (2) the Wards and other purchasers were not given notice, and (3) the motion should be granted. Doc. #94.

This motion was originally set for hearing on January 13, 2021, on 28 days' notice pursuant to Local Rule of Practice ("LBR") 9014-1(f)(1). Doc. #77. After many continuances to which the parties agreed, the court permitted the Wards to augment the record not later than August 31, 2022, any party could file and serve written opposition not later than September 14, 2022, and any reply could be filed and served not later than September 21, 2022. Docs. ##96-97; #108; #110; #146; #150; #166; #168; #194; #196; #206; #208; #214; #217.

The Wards timely augmented the record. Docs. ##220-222.

Debtor timely filed supplemental opposition on September 14, 2022. Docs. ##230-31.

That same day, Richard Barnes, individually and as Trustee of the Richard Allen Barnes Trust dated September 1, 2011 ("Barnes"), and Parker Foreclosure Services, LLC ("Parker Foreclosure") filed a joinder. Doc. #228.

1     Debtor opposed Barnes' and Parker Foreclosure's joinder on
2     the basis of issue preclusion. Doc. #233.

3     The Wards replied. Doc. #235.

4     At the hearing on September 28, 2022, the court further
5     continued the hearing so that the Debtor could file and serve
6     additional evidence solely to address Debtor's lack of response
7     to the parties' related State Court Action in Tulare County
8     Superior Court, and the Wards were permitted to file and serve
9     additional evidence in response not later than October 28, 2022.
10    Docs. #238; #240.

11    Debtor timely filed a supplemental declaration. Debtor
12    Decl., Doc. #252. The Wards did not file any additional
13    pleadings, but they were not required to do so.

14    On November 9, 2022, the parties presented oral argument and
15    this motion was taken under submission. Civ. Mins. (Nov. 9,
16    2022), Doc. #256. For good cause appearing, and for the reasons
17    stated below, the Wards' motion will be GRANTED and the
18    automatic stay retroactively annulled as to the Wards effective
19    October 25, 2017. This ruling will annul the effect of the
20    automatic stay only, but not its existence. Whether willful stay
21    violations were committed by Barnes, Parker Foreclosure, the
22    Lincicums, or the Wards will be litigated in Debtor's related
23    adversary proceeding, and Debtor's claim for damages, if any,
24    will be determined at a later date.

25

26    Request for Judicial Notice

27    The Wards and Debtor both request the court take judicial
28    notice of certain documents filed in this case, Debtor's related

adversary proceeding, Adv. Proc. No. 20-01035 ("AP"), the Wards'
state court lawsuit against Debtor ("State Court Action"), and
the retrospective appraisal report of Hopper Company. Docs. #82;
#91; #221. The court may take judicial notice of all documents
and other pleadings filed in this bankruptcy case, in the
related adversary proceeding, filings in other court
proceedings, and public records. Fed. R. Evid. ("FRE") 201. *Bank
of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Servs., LLC)*, 530
B.R. 711, 717 (Bankr. C.D. Cal. 2015). The court takes judicial
notice of the requested documents, as well as the pleadings
filed in this bankruptcy case, Debtor's adversary proceeding,
and the Wards' State Court Action, but not the truth or falsity
of such documents as related to findings of fact. *In re Harmony
Holdings, LLC*, 393 B.R. 409, 412-15 (Bankr. D.S.C. 2008).

Joinder

As noted above, Barnes and Parker Foreclosure filed a
joinder to the Wards' motion on September 14, 2022. Doc. #228.

Debtor opposes joinder because joinder is impermissible in a
contested matter and issue preclusion bars the joinder.
Doc. #223. The court agrees.

First, Fed. R. Bankr. P. 9014(c) incorporates certain Part
VII rules to be applicable in contested matters. Notably absent
from those incorporated rules is Fed. R. Bankr. P. 7018
regarding joinder.

Second, under California law, issue preclusion is applicable
if the following threshold elements are satisfied: (1) the issue
sought to be precluded from relitigation is identical to that

decided in a former proceeding; (2) the issue was actually
litigated in the former proceeding; (3) the issue was
necessarily decided in the former proceeding; (4) the decision
in the former proceeding is final and on the merits; and (5) the
party against whom preclusion is sought was the same as, or in
privity with, the party to the former proceeding. *Italiane v.
Catanzarite, (In re Italiane)*, 632 B.R. 662, 671 (B.A.P. 9th
Cir. 2021), citing *In re Plyam*, 530 B.R. 456, 462 (B.A.P. 9th
Cir. 2015) & *Lucido v. Superior Court*, 51 Cal. 3d 335, 351
(1990).

Here, Barnes and Parker Foreclosure previously sought to
retroactively annul the stay in this bankruptcy proceeding.
Docs. ##171-80; WEW-4. After considering Debtor's opposition and
analyzing the application of the *Fjeldsted* factors, the court
denied that motion. Docs. ##191-92. Therefore, (1) the issues
sought to be precluded from relitigation by Barnes and Parker
Foreclosure are identical to those already decided in their
former motion; (2) the issues in the former proceeding were
actually litigated because the issues were fully briefed and
decided on the merits of the evidence proffered; (3) the issues
were necessarily decided because the court analyzed the merits
of each issue raised in the motion and opposition; (4) the
decision in the former proceeding is final and on the merits
because it was entered on March 16, 2022 and neither Barnes nor
Parker Foreclosure appealed the order within 14 days of its
entry; and (5) Barnes and Parker Foreclosure are the same
parties to the former proceeding. Accordingly, Barnes' and
Parker Foreclosure's joinder will be DENIED.

**BACKGROUND**

Debtor's Interest in Property

Debtor was conveyed an interest in Property via grant deed from Raul Natera and quitclaim from Rachel N. Milby as trustee of the Milby Trust in March of 2016. Doc. #83, *Exs. A*, *B*. Shortly after, Debtor obtained a loan from Barnes on or about on March 23, 2016, secured by a deed of trust. *Id.*, *Ex. C*. Debtor and his four siblings had been conveyed an interest in the Property. Debtor Dep., Doc. #222, *Ex. A*. Debtor used the loan proceeds from Barnes to satisfy all other encumbrances and acquire all portions of the Property from his siblings. *Id.* Debtor then conveyed the Property to himself as "an unmarried man" on March 29, 2016. Doc. #83, *Ex. D*.

Debtor also owned a mobile home ("Mobile Home"), which he and his then-wife, Maria Mills, aka Mary Mills, purchased in 1987. Even after they divorced, Ms. Mills continued to own half of the Mobile Home. Debtor Dep., Doc. #222, *Ex. A*; Mills Dep., *id.*, *Ex. G*. At the time of the bankruptcy, the Mobile Home was located on the Property and appears to be exempted from the grant deeds executed by Raul Natera and Debtor, as well as the rider deed of trust executed by Debtor in favor of Barnes. Grant Deeds, Doc. #83, *Exs. B*, *C*, *D*; *cf. Ex. A*.

Bankruptcy and Foreclosure

On May 25, 2017, Parker Foreclosure recorded a *Notice of Default* against Property as trustee under the deed of trust. Default Notice, *id.*, *Ex. E*. Barnes executed a substitution of trustee on June 6, 2017, naming Parker Foreclosure as the new

trustee, which was recorded June 15, 2017. Subst. of Trustee, *id.*, *Ex. F*. On August 25, 2017, Parker Foreclosure executed a *Notice of Trustee's Sale* that was recorded on August 29, 2017. Notice of Trustee's Sale*, id.*, *Ex. G*. This notice provided that a public auction foreclosure sale ("Trustee's Sale") was scheduled for September 27, 2017, at 2:00 p.m., but it was later postponed to October 25, 2017. *Id.*; *cf. Ex. H*.

 Debtor filed chapter 13 bankruptcy on October 25, 2017, at or around 1:59:28 p.m., which imposed the automatic stay under 11 U.S.C. § 362. Doc. #1. Meanwhile, at or around 2:00 p.m., Parker Foreclosure proceeded with the rescheduled Trustee's Sale. Property was sold to Barnes as the prevailing bidder. Doc. #83, *Ex. H*.


<u>Barnes' and Parker Foreclosure's Knowledge of the Bankruptcy</u>

 After the petition was filed, Debtor's then-representative, Sylvia Gutierrez, spoke by telephone with Donald Parker, Parker Foreclosure's owner, at approximately 2:03 p.m. and informed him of the bankruptcy. Gutierrez Decl., Docs. #89, #231, *Ex. B*. Since the sale was scheduled for 2:00 p.m., it had already occurred by the time Debtor's counsel's office contacted Parker Foreclosure. *Id.* Barnes has testified that although Mr. Parker died before this action was filed, Mr. Parker's notes showed that he was not aware of the bankruptcy prior to the sale. Barnes Dep., Doc. #222, *Ex. B*.

 The following day, October 26, 2017, Parker Foreclosure executed a *Trustee's Deed Upon Sale* ("Trustee's Deed") in favor of Barnes, which was recorded in Tulare County on October 30,

2017. Trustee's Deed, Doc. #83, *Ex. H*. Parker Foreclosure recorded the Trustee's Deed despite having been informed of the bankruptcy by Ms. Gutierrez the day of the sale.[1] *Id.*

Parker Foreclosure informed Barnes of the bankruptcy via facsimile on November 28, 2017 and "STRONGLY" advised Barnes to obtain a bankruptcy attorney to seek relief from the automatic stay. Doc. #231, *Ex. I* to *Ex. C*. Although Barnes "held off for quite some time" from initiating eviction proceedings until after the case had been dismissed, neither he nor Parker Foreclosure sought relief from the automatic stay because they believed the sale was legal. Barnes Dep., Doc. #222, *Ex. B*. This belief resulted in Parker Foreclosure's recordation of the Trustee's Deed. *Id.*

Dismissal and Eviction

On January 3, 2018, a little more than two months after filing the petition, Debtor's bankruptcy case was dismissed for failure to timely pay filing fee installment payments. Doc. #36. Debtor was subsequently evicted from Property. Sandra Ward Decl., Doc. #78. However, Barnes has testified that he did not evict Debtor until after the bankruptcy case was dismissed. Barnes Dep., Doc. #222, *Ex. B*.

///

---

[1] The court denied Barnes' request to annul the automatic stay, reasoning that Barnes and Parker Foreclosure had actual knowledge of the bankruptcy after the Trustee's Sale occurred on October 25, 2017, but before the Trustee's Deed was executed on October 26, 2017 and subsequently recorded October 30, 2017. *See* Civ. Mins. (Mar. 16, 2022), Doc. #191. This actual knowledge, combined with Barnes' considerably lengthy delay in taking corrective action, resulted in the *Fjeldsted* factors weighing against annulment of the stay. *Id.*

Debtor declared that he was evicted from Property in February 2018. Debtor Decl., Doc. #252. Around the time of the eviction, he aggravated a long-standing knee injury, which was eventually diagnosed as being a "bone on bone" injury that necessitated surgery. *Id.*

During this period of time, Debtor recruited his cousin, an attorney, to look into the eviction. After several months, he found out that the Property had been sold, but that the sale involved a title insurance company that Debtor's attorney cousin also represented, so there was a conflict of interest precluding the cousin from representing Debtor. *Id.* Additionally, Debtor believed that too much time had elapsed to fight the eviction anyways. *Id.*

Sale of Property to the Lincicums and Alleged Communications

Meanwhile, Barnes sold Property to Michael Lincicum and Mitzi Lincicum (collectively "the Lincicums") on March 27, 2018. The deed was recorded in Tulare County on April 11, 2018. Doc. #83, *Ex. I.* Debtor did not occupy Property then. Sandra Ward Decl., Doc. #78; Debtor Decl., Doc. #252.

*Maria Mills*—

Ms. Mills, discussed briefly above, was deposed on October 13, 2021. Mills Dep., Docs. #222, *Ex. G*, #231, *Ex. D.* She attested to informing Mr. Lincicum that Debtor filed for bankruptcy and urged him to speak to Barnes because the Property still belonged to Debtor, and therefore the Mobile Home did not need to move. *Id.* Ms. Mills also testified that she was

9

unfamiliar with Mitzi Lincicum, the wife of Michael Lincicum. *Id.*

But in his deposition on September 16, 2021, Michael Lincicum testified that he and his wife purchased Property after seeing a picture of the eviction notice only. Michael Lincicum Dep., Doc. #222, *Ex. C*. Both of the Lincicums testified in their depositions that they did not know the Property was obtained by Barnes from a foreclosure sale, did not know about the bankruptcy, and did not know that it belonged to Debtor. *Id.*; Mitzi Lincicum Dep., *id.*, *Ex. D*.

*Susie Kellogg—*

Susie Kellogg, Mr. Lincicum's sister, allegedly gave Mr. Lincicum $40,000 from a life insurance payment to invest in Property. Kellogg Dep., *id.*, *Ex. E*.

Ms. Mills testified that she was called by Ms. Kellogg, but handed the phone to her son, Miguel Natera, aka Mike, who purportedly explained that (1) Debtor had filed for bankruptcy; (2) the Property was protected; (3) the Property still belonged to Debtor; (4) Barnes was not the real owner of the Property; and (5) Barnes did not have the right to sell Property to Mr. Lincicum. Mills Dep., *id.*, *Ex. G*; Mills Decl., Doc. #88; *cf.* Miguel Natera Dep., Doc. #231, *Ex. F*.

Miguel Natera, Debtor's son, filed a declaration claiming that he spoke to Ms. Kellogg on or about May 3, 2018, and told her about the issues relating to the sale of Property. Miguel Natera Decl., Doc. #87. Specifically, he informed her that his father's bankruptcy had stopped the sale, so the Property still

belonged to Debtor. *Id.* Ms. Kellogg purportedly stated that she
would let Mr. Lincicum know about these issues. *Id.* Although
this claim is supported by the declaration of Maria Mills, the
statements of Ms. Kellogg in both the declarations and in the
depositions are hearsay. Mills Decl., Doc. #88; FRE 801-03.

Ms. Kellogg denied allegations that she was informed of the
bankruptcy when she was deposed on October 21, 2021. Kellogg
Dep., Doc. #222, *Ex. E.* Ms. Kellogg claims that when she tried
to call a lady named Mary (which appears to be a reference to
Maria Mills), the lady hung up on her. *Id.* As a result, Kellogg
claims that she did not speak to anybody about the Property. *Id.*

Ms. Kellogg testified that she called Mary's son, Miguel
Natera, who allegedly said he would speak to Mr. Lincicum, and
that he was not going to spend $15,000 to move the Mobile Home
off of the Property. *Id.* But as above, Miguel Natera's alleged
statements here are hearsay. FRE 801-03. Upon Ms. Lincicum's
inquiry about a bankruptcy after this lawsuit was filed, Ms.
Kellogg stated that she did not know anything about a
bankruptcy. Kellogg Dep., Doc. #222, *Ex. E.*

*Bryce Smith*—

Bryce Smith, a realtor, was engaged by the Lincicums, and
later the Wards, in both their purchase and sale of the
Property. Debtor declared that sometime in March 2018, around
the time Barnes sold Property to the Lincicums, Debtor saw
Barnes, Michael Lincicum, Roger Ward, and realtor Bryce Smith on
the Property. Debtor Decl., Doc. #86. Bryce Smith allegedly
approached Debtor and demanded that he leave the Property. *Id.*

Mr. Smith's comments to Debtor are hearsay. FRE 801-03.

Mr. Smith was deposed on August 23, 2021. Smith Dep., Doc. #222, *Ex. F*. Mr. Smith claims that he dealt with Raul Natera, Debtor's father, prior to the sale in an effort to get information about the Mobile Home. *Id.* Although the Mobile Home issues remained unresolved, the Wards decided to move forward with the purchase anyway.

Mr. Smith claims that he had no contact with Debtor or Ms. Mills. *Id.* Ms. Mills purportedly did not return his calls or respond to his letters. Until learning about it at the deposition, Mr. Smith claims that he did not know Debtor had filed bankruptcy, or even that he ever owned the Property at any point. *Id.*

Although Mr. Smith claims that Ms. Mills did not return his calls and that he did not know about the bankruptcy, Ms. Mills claims that she told Mr. Smith that Debtor had filed bankruptcy, and that he was still the legal owner of the Property and Mr. Barnes did not have the right to sell it. Mills Dep., Docs. #222, *Ex. G*, #231, *Ex. D*.

Since Ms. Mills told Mr. Smith, an agent of the Lincicums, about the bankruptcy, Debtor argues that the Lincicums must have had constructive knowledge of the bankruptcy. Doc. #230. Mr. Smith denies these allegations. However, Mr. Smith did acknowledge that Debtor contested ownership of the Mobile Home, which was allegedly based on hearsay from the Wards and Lincicums.

Additionally, Mr. Smith testified that his practice was to review title reports and to instruct clients to do so as well.

Smith Dep., Docs. #222, *Ex. F*, #231, *Ex. E*. The preliminary
title report did disclose Debtor's bankruptcy during which the
October 30, 2017, conveyance from Parker Foreclosure to Barnes
occurred. *Id.*, *Ex. D* to *Ex. E*. The Lincicums signed for receipt
of the preliminary title report. *Id.*, *Ex. E* to *Ex. E*.

Sale of Property to the Wards

   On June 14, 2018, the Lincicums sold the Property to the
Wards via grant deed, which was recorded in Tulare County on
June 21, 2018. Grant Deed, Doc. #83, *Ex. J*.

   Both Roger and Sandra Ward were deposed on August 27, 2021.
Roger Ward & Sandra Ward Deps., Doc. #222, *Exs. H* & *I*. Both
claim that they had never spoken with Debtor, had no knowledge
of the bankruptcy filing, and claim to be *bona fide* purchasers
of Property. *Id.* Specifically, the Wards claim that they did not
learn of the bankruptcy until they were served with the
adversary complaint in June of 2020. Sandra Ward Decl.,
Doc. #78.

   Since Mr. Smith acted as the Lincicums' and the Wards'
agent, Debtor contends that the Wards also had knowledge of the
bankruptcy due to their agency relationship.

*Michael Reeder*—

   Additionally, Miguel Natera declares that he told Michael
Reeder, the son-in-law to the Wards, that the bankruptcy had
stopped the foreclosure sale and Debtor still owned the
Property, but Mr. Reeder was allegedly not concerned about the
bankruptcy because it could not be undone if sold more than

once. Miguel Natera Decl. & Dep., Docs. #87, #231, *Ex. F.* Mr.
Reeder allegedly informed Miguel Natera that his parents-in-law
were intending to purchase the Property and was allegedly acting
as a middleman for the Wards, but this statement is also
hearsay. *Id.;* FRE 801-03.

But Mr. Reeder was deposed on September 20, 2021 and denied
ever talking to Miguel Natera or Maria Mills when the Wards were
in the process of purchasing the Property. Reeder Dep.,
Doc. #222, *Ex. J.* Mr. Reeder acknowledges that he has known
Debtor for many years but claims that he does not know Ms. Mills
and has never spoken to her. Further, Mr. Reeder claims that he
has not represented the Wards in any capacity with respect to
the Property. *Id.*

Improvements

The Wards claim to have paid the property taxes and invested
at least $35,647.00 to maintain and improve Property. Sandra
Ward Decl., Doc. #78. Specifically, the Wards removed trees and
irrigated, laid a permanent foundation for the mobile home,
laser-leveled and cleaned up the 9.6-acre parcel, fumigated,
fenced and gated the 9.6-acre parcel, relocated an electrical
pole, pumped the septic tank and improved plumbing and
insulation, and erected a flagpole. *Id.* Additionally, the Wards
claim that the Lincicums improved the Property before selling it
to the Wards by drilling a water well and installing and
repairing the equipment necessary to pump groundwater to the
surface for residential use. *Id.* However, Debtor objected to the
Wards' statements regarding improvements made by Lincicums,

14

which is sustained in the rulings on objections attached to the end of this ruling. Evid. Objs., Doc. #90.

In addition to paying $150,000 to purchase Property, the Wards have invested $35,647.00 in improvements and maintenance and $19,515.00 to clear title to the Mobile Home and pay property taxes and irrigation assessments. Sandra Ward Decl., Doc. #78. If this motion is not granted, the Wards estimate that they stand to lose over $200,000. *Id.*

Debtor's Knee Surgery and Recovery

Shortly after the sale to the Wards, Debtor was admitted to the Veteran's Affairs ("VA") hospital in Fresno for knee surgery on June 22, 2018. Debtor Decl., Doc. #252. Debtor was discharged from the hospital nearly one month later on July 17, 2018. *Id.* After being released from the hospital, Debtor stayed with his son, Manny, for approximately one month before moving in with family in Hanford, where he continued post-surgery rehab. *Id.* After that, Debtor briefly moved to Pixley, returned to Hanford, and then eventually settled in Tulare. *Id.* Debtor completed physical therapy in September 2018. *Id.*

State Court Action

In August of 2018, the Wards asked Debtor to remove the Mobile Home. Sandra Ward Decl., Doc. #78. In November of 2018 and after receiving no response, the Wards filed the State Court Action, Tulare County Superior Court Case No. 186664, which sought a judgment of abandonment of the Mobile Home and for recovery of rents and costs related to maintenance and storage.

*Id.*; *cf.* State Court Action Compl., AP Doc. #357, *Ex. C*. The
Superior Court entered a judgment in favor of the Wards on
December 2, 2019. J., Doc. #83, *Ex. K*. This judgment provides:
(1) the Wards are the owners of the Property; (2) the Mobile
Home was legally abandoned by Debtor; (3) the Wards can take
title to the Mobile Home through the California Department of
Housing and Community Development's ("HCD") process, and (4)
Debtor must pay the Wards $15,131.87. *Ibid.* The Superior Court
also entered an Order for Costs. Order, *id.*, *Ex. L*.

The Wards followed the HCD procedures and became title
owners of the Mobile Home. Sandra Ward Decl., Doc. #78. The
Wards claim to have spent $19,515.00 in attorney's fees, costs,
investigator fees, HCD fees, and registration fees to obtain
title ownership, as well as property taxes and irrigation
assessments. *Id.*

Debtor's Lack of Involvement and Eventual Reinvolvement

Towards the end of 2018 or beginning of 2019, Debtor began
receiving documents that required a response to the Wards' legal
action against him and his ex-wife, Ms. Mills. Debtor Decl.,
Doc. #252. In approximately March of 2019, Debtor hired a man
named "Mr. Dunn" to prepare paperwork. *Id.* Debtor and Mr. Dunn
went to State Court Action hearings on two occasions, but Mr.
Dunn was not an attorney. Debtor claims he was not permitted to
be in court without an attorney because the case was very
complicated. *Id.*

Debtor did not have any money to pay an attorney to
represent him and did not know what to do. Ms. Mills, who had

previously been helping Debtor, was caring for her sick father, and lived over seven hours away, so she was not available. *Id.*

Sometime in 2019, Debtor was informed that the State Court Action would go to mediation. *Id.* Since an attorney was not needed for mediation, Debtor stopped looking for one. However, mediation was canceled, and the Wards subsequently sought and prevailed on summary judgment. *Id.*

Debtor learned that the Wards had obtained a judgment against him in late 2019 or early 2020. *Id.* In March 2020, Debtor hired his current counsel, Fear Waddell, P.C., on a contingency basis, who reopened the case in June of 2020 and filed the adversary proceeding against Barnes, Parker Foreclosure, the Lincicums, and the Wards.

Related Bankruptcy Proceedings Post-Reopening

The Wards filed their first motion to retroactively annul the automatic stay on September 25, 2020. Doc. #55; TAT-1. It was denied for procedural reasons on October 21, 2020. Docs. ##73-74.

The Wards' second attempt — this motion — was filed on November 12, 2020. Doc. #76. It has been pending for nearly two years.

In September of 2021, Debtor filed a motion for summary judgment in the bankruptcy seeking declaratory relief on violation of the automatic stay. Doc. #115; FW-3.

Not long after, Barnes and Parker Foreclosure filed their first motion to retroactively annul the automatic stay on October 29, 2021. Doc. #130; WEW-3. It was denied for procedural

reasons on January 7, 2022. Docs. ##163-64.

Barnes and Parker Foreclosure re-filed their second motion to retroactively annul the automatic stay on February 16, 2022. Doc. #171; WEW-4. After reviewing the evidence, the court denied that motion because it appeared that Barnes and Parker Foreclosure had knowledge of the bankruptcy, repeatedly violated the automatic stay, and considerably delayed in seeking annulment. Docs. ##191-92. The minutes indicated that damages would be determined in the parties' related adversary proceeding. Civ. Mins. (Mar. 16, 2022), Doc. #191.

On October 4, 2022, the court issued a ruling denying Debtor's summary judgment motion related to this contested matter due to remaining genuine issues of material fact. Docs. #242; #244.

Meanwhile, the adversary proceeding continued. AP 20-01035. Barnes and Parker filed a third-party complaint to add the title company as a third-party defendant, but the third-party complaint was amended in August 2022. AP Docs. #246; #327. Multiple summary judgment motions have been filed, but discovery has halted and has not yet resumed due to supplemental and third-party pleadings. AP Docs. #124; #138.

At first, the Wards and Debtor agreed this motion could be continued to track the related adversary proceeding in which Debtor seeks relief against the Wards and others. This allowed for efficient discovery and factual development. Now, the Wards and Debtor ask the court to decide this motion on the record presented. Each party then is deemed to consent to the court's resolution of factual issues under Fed. R. Civ. P. 43(c) (Fed.

1   R. Bankr. P. 9017) and LBR 9014-1(f), (g)(3).

2

3                           **DISCUSSION**

4        11 U.S.C. § 362(d)(1) allows the court to grant relief from

5   the stay for cause, including the lack of adequate protection.

6   "Because there is no clear definition of what constitutes

7   'cause,' discretionary relief from the stay must be determined

8   on a case-by-case basis." *In re Mac Donald*, 755 F.2d 715, 717

9   (9th Cir. 1985).

10       11 U.S.C. § 362(d)(2) allows the court to grant relief from

11  the stay if the debtor does not have an equity in such property

12  and such property is not necessary to an effective

13  reorganization.

14       The Wards seek retroactive annulment to lift the automatic

15  stay effective as of the time of the sale on the petition date:

16  October 25, 2017, at 2:00 p.m. Docs. #76; #85. In summary, the

17  Wards maintain that they acquired Property from the Lincicums

18  without any knowledge of the bankruptcy that was dismissed

19  before they knew about Property. Docs. #76; #78; #80; #94; #220.

20       Debtor opposes on the basis that both the Lincicums and the

21  Wards had both actual and constructive knowledge of the

22  bankruptcy, either directly or through their agents, but they

23  opted to proceed exercising control over Property despite

24  knowledge of the automatic stay, and therefore are not entitled

25  to retroactive stay relief. Docs. ##85-89; #230.

26  ///

27  ///

28  ///

Agency Liability and the Wards' *Bona Fide* Purchaser Defense

A *bona fide* purchaser is a buyer that purchases property (1) for value, (2) in good faith, and (3) without actual or constructive knowledge of another's rights. *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 547 (1996).

Debtor argues that the Wards, as well as Barnes, Parker, and the Lincicums, had both direct, actual knowledge of the bankruptcy and constructive knowledge through their agents. Docs. #85; #230. Relying on Cal. Civ. Code § 2295, Debtor insists: (1) realtor Bryce Smith was the agent of Barnes, the Lincicums, and the Wards; (2) Susie Kellogg was an agent of the Lincicums; and (3) Michael Reeder was an agent of the Wards. *Id.*

The existence of an agency relationship can be demonstrated by circumstantial evidence, including the acts of the parties and their written and oral communications. *Whittaker v. Otto*, 188 Cal. App. 2d 619, 622-23 (Ct. App. 1961). Further, an agent is required to keep a principal informed of acts in the course of the agency. Cal. Civ. Code § 2020.

Since Mr. Smith, Ms. Kellogg, and Mr. Reeder were all informed of the bankruptcy at one point or another, Debtor argues that their knowledge of the automatic stay is imputed to their principals, which includes the Lincicums and the Wards. Docs. #85; #230. On that basis, Debtor urges the court to deny this motion because the Wards are not *bona fide* purchasers because they had actual and/or constructive knowledge of the bankruptcy.

The court need not decide at this time whether the Wards are *bona fide* purchasers in good faith without actual or

constructive knowledge, or whether the Wards are liable under
agency theories of liability. Both issues are heavily contested
and will be resolved in the related adversary proceeding.

Retroactive Stay Relief

    The Ninth Circuit Bankruptcy Appellate Panel warned that
retroactive relief should only be "applied in extreme
circumstances." *In re Aheong*, 276 B.R. 233, 250 (B.A.P. 9th Cir.
2002) (citations omitted). When deciding a motion to annul the
automatic stay, the court may consider the following "*Fjeldsted*"
factors:

> 1. Number of filings;
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
> 4. The Debtor's overall good faith (totality of circumstances test;
> 5. Whether creditors knew of the stay but nonetheless took action, thus compounding the problem;
> 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
> 7. The relative ease of restoring parties to the *status quo ante*;
> 8. The costs of annulment to debtors and creditors;
> 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative contract;
> 10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
> 11. Whether annulment of the stay will cause irreparable injury to the debtor;
> 12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted v. Lien (In re Fjelsted)*, 293 B.R. 12, 24-25

(B.A.P. 9th Cir. 2003). One factor alone may be dispositive. *Id.*

The court finds that the *Fjeldsted* factors weigh slightly in favor of annulling the automatic stay as follows:

1. <u>Number of filings</u>: There has only been one chapter 13 filing here, which ended in dismissal after two months due to failure to pay filing fees. This factor appears to either be inapplicable, or slightly weighs against annulling the automatic stay.

2. <u>Whether, in a repeat filing case, the circumstances indicate an intent to delay and hinder creditors</u>: The Wards claim that the timing of the bankruptcy on the day of the scheduled foreclosure and Debtor's failure to pay the filing fees indicate that the chapter 13 bankruptcy was filed with the intent to delay or hinder creditors, including later *bona fide* purchasers of the Property. Doc. #235. Although this was Debtor's only bankruptcy filing, his failure to intervene in the sale to the Lincicums and then to the Wards is evidence of scheme to harm creditors who spent resources improving the Property. Further, the bankruptcy was not disclosed in the State Court Action, and stay violation allegations were only raised after the state court issued a judgment against Debtor. *Id.*

In response, Debtor notes that this factor applies specifically to *repeat* filings. Docs. #85; #230. Since this was Debtor's first bankruptcy filing, this factor is inapplicable. The court agrees that this factor is inapplicable.

3. <u>Prejudice to creditors or third parties if the stay relief is not made retroactive, including harm to *bona fide* purchasers</u>: The Wards contend that they are *bona fide* purchasers

22

of Property because they purchased it for value, in good faith, and without actual or constructive knowledge of another's rights. Doc. #235. Although the Wards concede knowledge that ownership of the Mobile Home was in dispute at the time of their purchase, they affirm their lack of knowledge about the bankruptcy, or Debtor's claim to Property itself.

As *bona fide* purchasers, the Wards claim that they would be severely prejudiced if stay relief was not made retroactive. At the time this motion was filed, the Wards spent more than $35,000 improving and maintaining Property, in addition to paying the property taxes. The Wards claim that they purchased Property to give to their grandson. Further, they have been the current owners of the Property for more than four years and would not have continued to improve Property or sought to obtain ownership of the Mobile Home had they known that the underlying sale would be voided.

Debtor responds that the Wards are not *bona fide* purchasers because they had actual and/or constructive knowledge of the bankruptcy and the automatic stay with Barnes, Parker Foreclosure, and the Lincicums. Docs. #85; #230. This knowledge allegedly derives from their predecessors, who also had knowledge of the bankruptcy. Even so, Debtor claims the Wards were notified of the bankruptcy through (i) conversations with Ms. Mills and Miguel Natera and (ii) constructive knowledge under theories of agency liability from their realtor, Mr. Smith, and their alleged agent and son-in-law, Michael Reeder. As a result, there are no *bona fide* purchasers in this case, says Debtor, because the Wards were fully aware of the risks of

1  acquiring the Property. *Id.*

2      However, the Wards correctly point out that there is no

3  reliable evidence of their knowledge, constructive or otherwise.

4  Debtor's ex-wife and son claim to have notified the Wards'

5  agents, but those agents dispute being notified, or in the case

6  of Mr. Reeder, dispute being agents.

7      As noted above, the court declines to make any finding on

8  whether the Wards are *bona fide* purchasers at this time. Whether

9  the Property was purchased in good faith or without actual or

10 constructive knowledge will be an issue to be determined in the

11 adversary proceeding. Regardless of the correct narrative and

12 the Wards' status as *bona fide* purchasers, the record indicates

13 that the Wards would be severely prejudiced if the stay is not

14 annulled as to them because they have significantly improved the

15 Property over the last four years. Though Debtor was certainly

16 prejudiced by Barnes' and Parker Foreclosure's violation of the

17 automatic stay, such prejudice has been the status quo for five

18 years. Further, Debtor's prejudice can be mitigated if he

19 prevails in his claim for damages in the adversary proceeding.

20 This factor favors annulment.

21      4. Debtor's overall good faith (totality of the

22 circumstances): Good faith includes whether (1) the debtor has

23 misrepresented the facts or manipulated the Bankruptcy Code in

24 an inequitable manner; (2) Debtor's history of bankruptcy

25 filings; (3) Debtor intended to frustrate collection of a state

26 court judgment; and (4) "egregious behavior." *In re Welsh*, 711

27 F.3d 1120, 1132 (9th Cir. 2013), citing *In re Leavitt*, 171 F.3d

28 1219, 1224 (9th Cir. 1999). "In sum, the inquiry focuses on the

24

debtor's motivation and forthrightness with the court in seeking relief." *Welsh*, 711 F.3d at 1132.

The Wards argue that Debtor has not acted in good faith because: (a) his bankruptcy case was dismissed because he never paid the filing fee; (b) he did not complete credit counseling, so he was not eligible to even be a chapter 13 debtor; and (c) he never filed a plan or made any plan payments. Since he was never eligible to file bankruptcy, never eligible to confirm a plan, and did not own any equity interest in the Property, there was no estate to reorganize, and Property was not necessary for an effective reorganization. Doc. #235. Further, Debtor waited multiple years before reopening the bankruptcy and filing the adversary proceeding.

Debtor disagrees, contending that the chapter 13 petition was filed with intent to make his plan payments and cure the arrearage owed on the claim to Barnes, but due to Barnes' illegal filing of the Trustee's deed, any prospective refinance was rendered impossible. Docs. #85; #230. Debtor postulates that the joint collusion of the parties — Barnes, Parker Foreclosure, the Lincicums, and the Wards — resulted in the dismissal of his bankruptcy. These circumstances beyond his control hindered his ability to successfully complete the bankruptcy through refinancing Property, says Debtor.

However, there is no evidence that any alleged collusion prevented Debtor from paying the filing fee or attending to the prerequisite credit counseling. Even if he had paid the filing fee, this bankruptcy would ultimately still have been dismissed because Debtor was not eligible to be a chapter 13 debtor due to

his failure to complete a credit counseling course from an
approved counseling agency and failure to file a credit
counseling certificate reflecting the same. *See* 11 U.S.C. 109(h)
("an individual may not be a debtor under this title unless such
individual has, during the 180-day period ending on the date of
filing of the petition . . . received from an approved nonprofit
budget and credit counseling agency . . . an individual or group
briefing . . .").

Though there is no evidence of bad faith, misrepresentation
of facts, or egregious conduct, the timing of the bankruptcy
less than one minute before a rescheduled foreclosure sale and
Debtor's ineligibility to be a debtor suggest that Debtor's
bankruptcy petition was filed prematurely and/or solely to delay
the sale.

Debtor's supplemental declaration explains that the delay
in prosecuting this case was the result of health issues that
occurred shortly after dismissal of the bankruptcy and during
the pendency of the State Court Action. Debtor Decl., Doc. #252.
Although the court is not making any findings of bad faith,
Debtor's ineligibility to be a debtor and the undisputed reason
for the dismissal — failure to pay a filing fee — causes this
factor to slightly weigh in favor of annulment.

5. <u>Whether creditors knew of the stay but nonetheless took
action, thus compounding the problem</u>: The Wards claim that there
was no stay in effect at the time they purchased the Property,
and that there is no credible evidence that they learned of the
dismissed bankruptcy and its effect on the foreclosure sale of
Property prior to the Wards' purchase. Doc. #235. However, the

bankruptcy case and its potential impact on Parker Foreclosure's recording the Trustee's Deed on October 30, 2017, was disclosed in the preliminary title report to the Lincicums when they closed on the purchase of Property from Barnes.

Debtor emphasizes that this is the most relevant factor here. Docs. #85; #230. Barnes and Parker Foreclosure were promptly notified on the day of or shortly after the foreclosure sale. In spite of that knowledge and without taking any corrective action, they proceeded to execute and record the Trustee's Deed and then transferred Property to the Lincicums. Next, the Lincicums further compounded the problem by transferring Property to the Wards. The Wards subsequently improved the Property and obtained the Mobile Home, compounding the initial stay violation even more. But this argument begs the question of whether the Wards had knowledge of the bankruptcy case. This factor weighs against annulment but is not conclusive.

6. <u>Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure</u>: The Wards argue that Debtor failed to comply with the Bankruptcy Code, as evidenced by the dismissal for failing to pay the filing fee, failing to provide all pages of his state and federal tax returns, failing to complete credit counseling in the six months preceding the petition date, and failing to make all payments required by his chapter 13 plan. Doc. #235. Further, the Wards assert that Debtor further failed to comply with the Code because he neither notified them nor the Lincicums of the bankruptcy.

On the other hand, Debtor maintains that his lack of compliance was due to the Wards', the Lincicums', and Barnes' actions in clouding title to Property with the void Trustee's Deed. Had this not been done, Debtor could have potentially refinanced Property to fund his chapter 13 plan. Debtor's position is speculative at this time.

However, blaming Debtor's lack of compliance with the credit counseling prerequisite on his post-petition foreclosure does not make sense. Since Debtor was not eligible to be a debtor at the time he filed bankruptcy, his was never going to be able to comply with the Bankruptcy Code. This factor favors annulment.

7. The relative ease of restoring parties to the *status quo ante*: The Wards contend that it would be impossible to restore the parties to the *status quo ante*. Doc. #235. The Property has been sold multiple times, the Wards have been the owners for more nearly four and a half years, have paid property taxes, and have improved Property by setting the Mobile Home on a permanent foundation, fencing and laser leveling Property, installing plumbing and landscaping, and performing other maintenance and improvements. It would be impossible to remove those improvements or restore the value added back to the Wards. Further, the real estate and economic markets have shifted drastically since October 25, 2017, and there has been a pandemic.

In contrast, Debtor theorizes that restoring the parties to the *status quo ante* is relatively simple. Docs. #85; #230. Debtor is still the owner of the Property, and other parties may

litigate against each other or title insurance to recover their expenses from illegally removing Debtor from his property.

Given the complexity of this case and multiple transactions involved, it would be extremely burdensome to restore the parties to the *status quo ante*. The Wards paid property taxes, attorneys' fees, and made improvements to Property, which cannot be easily reversed. This factor weighs in favor of annulment.

8. <u>The costs of annulment to debtors and creditors</u>: The Wards claim there is no cost of annulling the stay because it maintains the status quo. Doc. #235. Debtor has damage claims against multiple parties, so he can recover his damages from those parties. *Id.* Meanwhile, the Wards claim to be at risk of losing over $200,000 if the stay is not annulled. Sandra Ward Decl., Doc. #78.

But if granted, Debtor replies that the cost of annulment would be "astronomical" because he would be denied his right to pursue corrective action against the creditors who colluded to willfully violate the automatic stay. Docs. #85; #230.

The cost to Debtor is certainly excessive but given the vast amount of change in the last five years, restoration of Property to its status before October 25, 2017 is not feasible. Further, Debtor has a damage claim under 11 U.S.C. § 362(k). This factor supports annulment.

9. <u>How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative contract</u>: The Wards focus on Debtor's 2.5-year delay between the initial stay violation and Debtor's reopening the case to file an adversary proceeding. Doc. #235. During this period, the

Wards maintain that they were never notified of the bankruptcy and did not learn about it until Debtor filed his adversary proceeding in June of 2020. Prior to reopening, the parties were engaged in litigation in the State Court Action, but Debtor did not raise the bankruptcy in any of his pleadings or appearances. Shortly after the case was reopened and the adversary proceeding was filed, the Wards moved relatively expeditiously to retroactively annul the automatic stay in September of 2020. But the Wards were not proactive, either. They did not act until after the case was reopened and the adversary proceeding was filed.

Debtor explains that the reason for the delay is that he was facing financial issues, including being forced out of his residence, and health issues, which prevented him from enforcing his rights sooner. Debtor Decl., Doc. #252. Shortly after the case was reopened and the adversary proceeding was filed, the Wards filed their first motion to annul the stay.

The delay from both sides is fairly egregious, but both Debtor and the Wards mitigate their delay through financial and health issues for Debtor, and lack of knowledge of the bankruptcy for the Wards. This factor appears to be neutral as to the Wards.

10. <u>Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief</u>: After the bankruptcy case was reopened, the Wards filed their first motion to annul the stay on September 25, 2020, approximately three months after reopening. Doc. #55; TAT-1.

Debtor accuses the parties – Barnes, Parker Foreclosure, the Lincicums, and the Wards – of knowing about the bankruptcy and continuing to violate the automatic stay anyway by repeatedly conveying Property. Docs. #85; #230.

But in the reverse, Debtor could have reopened the case sooner, and could have taken more proactive steps to notify the parties, including sending or recording a notice of the bankruptcy. Debtor explains that he could not do this because of his health and financial issues. Debtor Decl., Doc. #252. But these issues also could have prevented a successful bankruptcy. This factor weighs slightly in favor of annulling the automatic stay.

11. <u>Whether annulment of the stay will cause irreparable injury to the debtor</u>: If the stay is annulled, the Debtor will still have a damage claim against the parties involved in the transfers of Property in Debtor's related adversary proceeding. If the stay is not annulled, the Wards will suffer injury, but they may have a damage claim too.

On the other hand, Debtor argues that if the stay is annulled, he will lose his property, his right to deal with the debt owed on Property, and his ability to seek damages against the parties that willfully violated the stay. Docs. #85; #230. Debtor neglects to mention he exercised his right to reorganize and keep Property but his case was dismissed.

The court disagrees that Debtor will not have a damage claim if the stay is annulled as to the Wards. The extent of those damages is unclear but will be litigated in the adversary proceeding. This factor slightly favors annulment. Further, the

31

reality is Debtor has not pursued his rights until hiring his current counsel.

12. _Whether stay relief will promote judicial economy or other efficiencies_: The Wards insist that annulling the stay will promote judicial economy and other efficiencies by resolving the adversary proceeding. Doc. #235. The subsequent sale will remain intact, and title will be quieted to the Wards. However, if the stay is not annulled, litigation will continue, including all of the cross-actions between the parties for failure to deliver clear title to the Wards. But this is not completely accurate either. If the stay is annulled, it will be to the effect of the automatic stay only. Debtor still has a damage claim. Though the sale will remain intact, the Wards will not be relieved of any liability in the adversary proceeding should Debtor prevail. The court will not make a finding quieting title to the Wards. Such relief is unavailable on this motion. _See_ Fed. R. Bankr. P. 7001(2).

In response, Debtor acknowledges that annulment would reduce litigation. Docs. #85; #230. But with that loss would be Debtor's loss of his right to pursue his claims against the parties that took illegal action against him to acquire his property. Debtor contends that annulling the stay would unjustly harm the bankruptcy process by undermining the promotion of equity. The court disagrees. Equity is fostered by annulling the stay as to the Wards. This will allow the Debtor's damage action to proceed to trial against all defendants.

Debtor does not believe that this factor should weigh heavily into the court's decision. Though this factor weighs

heavily in favor of annulment, the court agrees that it is not, by itself, dispositive.

## CONCLUSION

Despite a compelling showing from both sides, the *Fjeldsted* factors slightly weigh in favor of retroactively annulling the automatic stay. There is conflicting evidence that the Wards had any knowledge of the bankruptcy. The considerable harm that would befall the Wards if annulment were not granted cannot be justified without more substantial evidence. The Debtor bears that burden under 11 U.S.C. § 362(g)(2).

Notwithstanding Debtor's ineligibility to be a debtor under 11 U.S.C. § 109(h), the automatic stay arose upon the filing of the petition and was still in full force and effect on October 25, 2017. Debtor was undoubtedly damaged due to Barnes' and Parker Foreclosure's recording of the Trustee's Deed, but Debtor still has a damage claim in the adversary proceeding. The court is not insulating the Wards or any other defendant in the adversary proceeding from Debtor's damage claim. Annulling the stay as to the Wards is not tantamount to a finding that the Wards, or any other defendant, did not willfully violate the stay. That issue remains to be decided.

11 U.S.C. § 362(d)(1) affords the court broad discretion and flexibility in its approach to granting relief from the automatic stay imposed under § 362(a). *Groshong v. Sapp (In re MILA, Inc.)*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010) ("The Bankruptcy Code also recognizes that certain circumstances require the court to respond to other interests and permits a

flexible approach to the stay as the circumstances may require."); *see also*, *Barnes v. Barnes (In re Barnes)*, 279 F. App'x 318, 319 (5th Cir. 2008) (per curiam) ("Bankruptcy courts are given broad discretion to fashion relief from the automatic stay, including retroactive annulment if warranted.").

Based on a weighing of the *Fjeldsted* factors, and for the reasons stated above, the court will GRANT this motion under 11 U.S.C. § 362(d)(1) to retroactively annul the effect of the automatic stay as to the Wards only, effective as of October 25, 2017. This ruling annuls only the effect of the automatic stay only, not its existence. The stay arose when Debtor filed chapter 13 bankruptcy on October 25, 2017 and this ruling does not negate any violation(s) of the stay. Debtor's claim for damages resulting from any stay violation(s) will proceed in his related adversary proceeding against all parties, including the Wards, and will be determined at a later date.

The Wards' request for relief under 11 U.S.C. § 362(d)(2) is therefore moot.

The Moving Party shall lodge a proposed order approved only as to form by the Debtor's counsel.

**Dated:** Nov 16, 2022

**By the Court**

*René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

## RULINGS ON EVIDENTIARY OBJECTIONS

### Debtor's Objections to the Declaration of Thomas Trapani

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 1. "According to the records, the Debtor filed Case No. 17-14112 at 2:00 p.m. on October 25, 2017." Trapani Decl., Doc. #70 at ¶ 5, Lines 2:11-12. | 1a. Foundation, FRE 602.<br><br>1b. Personal knowledge, FRE 602.<br><br>1c. Relevance, FRE 401.<br><br>1d. Original documents, FRE 104(b), 1005, 1007<br><br>1e. Unidentified record, FRE 901(a).<br><br>1f. Inadmissible hearsay, FRE 801-03. | 1a. Sustained.<br><br>1b. Sustained.<br><br>1c. Overruled.<br><br>1d. Sustained.<br><br>1e. Sustained.<br><br>1f. Sustained. |
| 2. "According to the records, the Debtor filed Case No. 17-14112 at exactly the same moment as the Trustee's foreclosure auction of the Subject Property." *Id.* at ¶ 6, Lines 2:13-14. | 2a. Foundation, FRE 602.<br><br>2b. Personal knowledge, FRE 602.<br><br>2c. Relevance, FRE 401.<br><br>2d. Original documents, FRE 104(b), 1005, 1007.<br><br>2e. Unidentified record, FRE 901(a).<br><br>2f. Inadmissible Hearsay, FRE 801-03. | 2a. Sustained.<br><br>2b. Sustained.<br><br>2c. Overruled.<br><br>2d. Overruled.<br><br>2e. Sustained.<br><br>2f. Sustained. |
| 3. "My review of the official records of Tulare County for the Subject Property shows that neither the Voluntary Petition filed by the Debtor, nor the notice of the Chapter 13 Case, were ever recorded in those official records." *Id.* at ¶ 8, Lines 2:16-18. | 3a. Foundation, FRE 602.<br><br>3b. Personal knowledge, FRE 602.<br><br>3c. Relevance, FRE 401.<br><br>3d. Original documents, FRE 104(b).<br><br>3e. Inadmissible Hearsay, FRE 801-03. | 3a. Sustained.<br><br>3b. Sustained.<br><br>3c. Overruled.<br><br>3d. Overruled.<br><br>3e. Sustained. |

///

///

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 4. "Claims that would have to be adjudicated would include (a) claims by Mr. and Mrs. Ward against Mr. and Mrs. Lincicum for failure to deliver clear title to the Subject Property, (b) claims by Mr. and Mrs. Lincicum against Mr. Barnes for failure to deliver clear title to the Subject Property, (c) claims for unjust enrichment by Mr. and Mrs. Ward against the Debtor, and (d) the claims of the Debtor that are currently pending. All of these legal proceedings will unnecessarily consume judicial resources and drain the resources of innocent parties as well. The Court would face the challenge of making Mr. and Mrs. Ward whole while depriving them of the benefit of their bargain." *Id.* at ¶ 10, Lines 2:22-28. | 4a. Prejudice exceeds probative value. FRE 403.<br><br>4b. Relevance, FRE 401.<br><br>4c. Improper opinion. FRE 701-02. | 4a. Overruled.<br><br>4b. Overruled.<br><br>4c. Overruled. |

Debtor's Evid. Objs, Doc. #90.

///
///
///
///
///
///
///
///
///
///
///
///
///

36

**Debtor's Objections to the Declaration of Sandra Ward**

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 1. "As *bona fide* purchasers of the property . . ." Ward Decl., Doc. #78 at ¶ 1, Lines 2:2-3. | 1a. Improper lay opinion, FRE 701-02.<br><br>1b. Prejudice exceeds probative value. FRE 403. | 1a. Sustained.<br><br>1b. Overruled. |
| 2. "According to the records that I have reviewed, the Debtor filed Case No. 17-14112 at the same exact moment as the trustee's foreclosure sale auction of the property that we purchased and now own." *Id.* at ¶ 6, Lines 2:13-14. | 2a. Foundation, FRE 602.<br><br>2b. Personal knowledge, FRE 602.<br><br>2c. Relevance, FRE 401.<br><br>2d. Original documents, FRE 104(b), 1005, 1007.<br><br>2e. Unidentified record, FRE 901(a).<br><br>2f. Inadmissible hearsay, FRE 801-03. | 2a. Sustained.<br><br>2b. Sustained.<br><br>2c. Sustained.<br><br>2d. Overruled.<br><br>2e. Sustained.<br><br>2f. Sustained. |
| 3. "My representatives have conducted a search of the official records of Tulare County and found that neither the Voluntary Petition filed by the Debtor, nor the notice of the Chapter 13 Case were ever recorded in those official records." *Id.* at ¶ 7, Lines 2:15-17. | 3. Inadmissible hearsay. FRE 801-03. | 3. Sustained. |
| 4. "According to my research, the successful bidder, Mr. Barnes, evicted the Debtor from the Subject Property sometime between October 25, 2017 and March 27, 2018." *Id.* at ¶ 8, Lines 2:18-19. | 4a. Foundation, FRE 602.<br><br>4b. Personal knowledge, FRE 602.<br><br>4c. Relevance, FRE 401.<br><br>4d. Original documents, FRE 104(b), 1005, 1007.<br><br>4e. Unidentified record, FRE 901(a). | 4a. Sustained.<br><br>4b. Sustained.<br><br>4c. Sustained.<br><br>4d. Sustained.<br><br>4e. Sustained. |

///

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 5. "According to the [sic] my research, after March 27, 2018, but before June 14, 2018, Mr. and Mrs. Lincicum improved the Subject Property by drilling a water well and installing and repairing the equipment necessary to pump ground water to the surface for residential use on the Subject Property. The retail value of this well and pump equipment is $30,555.00." *Id.* at ¶ 10, Lines 2:22-25. | 5a. Foundation, FRE 602.<br><br>5b. Personal knowledge, FRE 602.<br><br>5c. Relevance, FRE 401.<br><br>5d. Original documents, FRE 104(b), 1005, 1007.<br><br>5e. Unidentified record, FRE 901(a). | 5a. Sustained.<br><br>5b. Sustained.<br><br>5c. Sustained.<br><br>5d. Sustained.<br><br>5e. Sustained. |
| 6. "My husband and I have cared for the Subject Property since purchasing it in June of 2018." *Id.* at ¶ 12, Lines 3:1-2. | 6. Relevance, FRE 401. | 6. Sustained. |
| 7. "My husband and I were not creditors or interested parties in the Debtor's Chapter 13 Case." *Id.* at ¶ 25, Lines 4:19-20. | 7. Prejudice exceeds probative value. FRE 403. | 7. Overruled. |
| 8. "As the successors in interest to Mr. Barnes' position in the Property, my husband and I have standing in this re-opened Chapter 13 Case to seek annulment of the automatic stay." *Id.* at ¶ 27, Lines 4:23-24. | 8. Improper lay opinion as to ultimate issue. FRE 701-02. | 8. Overruled. |
| 9. "My husband and I are informed and believe that the Promissory Note this is secured by the Deed of Trust recorded against the Subject Property was in default on the Petition Date because a foreclosure sale against the Subject Property was scheduled for the Petition Date." *Id.* at ¶ 28, Lines 4:25-27. | 9a. Personal knowledge and/or foundation, FRE 602.<br><br>9b. Inadmissible hearsay, FRE 801-03. | 9a. Sustained.<br><br>9b. Sustained. |
| 10. "My husband and I paid market value to a third party through escrow . . ." *Id.* at ¶ 33, Lines 5:9-10. | 10a. Personal knowledge and/or foundation, FRE 602.<br><br>10b. Improper lay opinion. FRE 701. | 10a. Overruled.<br><br>10b. Overruled. |

///

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 11. "Had a notice of the Debtor's petition been given, my husband and I would have taken steps to protect our interests before purchasing the Subject Property." *Id.* at ¶ 34, Lines 5:11-12. | 11. Relevance, FRE 401. | 11. Overruled. |
| 12. "Had notice of the Debtor's Petition been given, my husband and I would have taken steps to protect our interests before we invested significant resources in the Subject Property." *Id.* at ¶ 35, Lines 5:13-14. | 12. Relevance, FRE 401. | 12. Overruled. |
| 13. "My husband and I are at risk of losing over $200,000.00 if we are not granted the relief we seek. *Id.* at ¶ 38, Lines 5:20-21. | 13. Improper lay opinion. FRE 701-02. | 13. Overruled. |
| 14. "It would be impossible to remove the improvements and/or to restore the value added by Mr. and Mrs. Lincicum and my husband and me." *Id.* at ¶ 40, Lines 5:25-26. | 14. Prejudice exceeds probative value. FRE 403. | 14. Overruled. |
| 15. "In order to return the parties to the Status Quo Ante, the Debtor would have to compensate my husband and me for the time, money, effort, trauma and disruption of our lives that occurred while being forced to file a lawsuit and obtain a Judgment and then registering the mobile home in our name and paying property taxes." *Id.* at ¶ 41, Lines 5:27-6:2. | 15. Prejudice exceeds probative value. FRE 403. | 15. Overruled. |

*Id.*

**Dated:** Nov 16, 2022

**By the Court**

*René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

ARMANDO NATERA
PO Box 590
Pixley CA 93256

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Gabriel J. Waddell
7650 North Palm Avenue, Suite 101
Fresno CA 93711

Peter A. Sauer
7650 North Palm Avenue, Suite 101
Fresno CA 93711

Thomas A. Trapani
1550 Parkside Drive, Suite 300
Walnut Creek CA 94596

William E. Winfield
5811 Olivas Park Dr., Suite 202
Ventura CA 93003

Zi C. Lin
225 S. Lake Avenue
Suite 1400
Pasadena CA 91101

Kelly Andrew Beall
2212 Dupont Drive
Irvine CA 92612